## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

WENDELL R. HAMILTON,       )
                                       )
           **Petitioner,**        )
                                       )
         **vs.**              )     **Case No. CIV-05-836-M**
                                       )
DAVID C. MILLER, Warden,    )
                                       )
          **Respondent.**     )

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, brings this action pursuant to 28 U.S.C. § 2254 seeking a writ of habeas corpus. United States District Judge Vicki Miles-LaGrange has referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). A response to the petition has been filed, as well as a reply,[1] and so the matter is at issue and ready for disposition. For the reasons set forth below, it is recommended that the petition be denied.

By this action, Petitioner challenges his convictions by a jury on ten counts of first degree robbery, one count of robbery with an imitation firearm, and one count of possession of drug paraphernalia, after former conviction of two or more felonies, for which he was sentenced to eleven sentences of life imprisonment on the robbery charges and one year of imprisonment on the drug paraphernalia charge. Case No. CF-2001-943, District Court of Oklahoma County. Petitioner filed a direct appeal, and on November 7, 2003, the Oklahoma Court of Criminal Appeals affirmed the convictions, but modified the sentences to provide that the life sentences of imprisonment were to run

---

[1]Petitioner's motion for leave to file a reply in excess of ten pages [Doc. No. 16] is hereby granted.

concurrently. Case No. F-2002-1259, Oklahoma Court of Criminal Appeals.  Petitioner then filed an application for post-conviction relief, which was denied by the state district court on March 15, 2005. Petitioner appealed this denial, and the Oklahoma Court of Criminal Appeals affirmed on June 16, 2005.  Case No. PC-2005-337, Oklahoma Court of Criminal Appeals.

By this action, Petitioner raises six separate grounds for relief.[2]  Petitioner first alleges that the trial court erred in permitting the joinder of the eleven counts of robbery and one count of possession of drug paraphernalia for trial.  Petition, p.  6.  Next, Petitioner claims that his sentences were excessive. Petition, p. 8. Petitioner next claims ineffective assistance of appellate counsel, alleging that his trial and appellate counsel were both from the Oklahoma County Public Defender's Office, creating a conflict of interest that caused appellate counsel to eliminate meritorious issues from the appeal in order to avoid conflict with her colleague.  Petition, p. 10; Brief in Support of Petitioner's Application for Post Conviction Relief, p.  3.  According to Petitioner, appellate counsel failed to raise two instances of ineffective assistance of trial counsel due to this conflict. Petition, p.  10(A); Brief in Support of Petitioner's Application for Post Conviction Relief, p.  7.  These instances are also the basis for a separate ground for relief based upon ineffective assistance of trial counsel.  The first such instance involved trial counsel's concession of guilt as to one count as charged and a concession of guilt as to a lesser

---

[2]The duplicate numbering of grounds by Petitioner has made it difficult to refer to them by number, and Respondent's renumbering of the grounds consecutively may only serve to further confuse the reader. Accordingly, the undersigned will instead substitute a substantive description of the ground being discussed, providing a citation to the place in the briefs where each party's position regarding that ground is contained.

included offense with regard to another count during her closing argument, allegedly without the consultation or consent of Petitioner.  Brief in Support of Petitioner's Application for Post Conviction Relief, p.  7-9.  The second instance was trial counsel's alleged stipulation to Petitioner's prior convictions during the second stage of the trial. Id. at 9-13.  Petitioner's next ground for relief is based upon his claim that the trial court erred in instructing the jury under the enhancement provisions applicable to general habitual offenders rather than the enhancement provisions specifically applicable to robbery offenses, and his final ground is that appellate counsel was ineffective for failing to raise the enhancement instruction issue on appeal.  Petition, p.  10(B); Brief in Support of Petitioner's Application for Post Conviction Relief, p. 13-15. Petitioner also seeks an evidentiary hearing in this Court.  Petition, p.  10(D); Brief in Support of Petitioner's Application for Post Conviction Relief, p.  15-16.

## I.  BACKGROUND

In January 2001, a series of robberies occurred in the Oklahoma City area.[3]  Eleven area stores – such as "dollar" stores, convenience stores, thrift stores, and restaurants – were robbed.  In seven of the cases, a man would hand the clerk a note telling the clerk "this is a robbery" and instructing the clerk to give him the money and he/she would not be shot. In the other four, he would ask for change or make a small purchase and then show the clerk what appeared to be a pistol handle under his shirt, announce the robbery, and demand money.  On January 23, 2001, following a robbery at a Dunkin Donuts store in Del City, Oklahoma, Petitioner and his son were stopped by a Del City

---

[3]This factual background is taken from Petitioner's brief on direct appeal, pages two through eight. See Response, Ex. 1.

police officer who was responding to the robbery call.  Inside the car, the police officer found a Dunkin Donuts sack (the clerk testified that the robber had ordered a donut and paid for it before the robbery), a jacket matching the description given by the Dunkin Donuts shop clerk, $150 cash, a toy pistol, and a crack pipe.

All of the victims of the eleven robberies identified Petitioner as the perpetrator, and Petitioner's son admitted that he drove the car for his father in some of the robberies. A handwriting analysis indicated that Petitioner had written six of the notes, and Petitioner's son admitted writing the seventh note.  Upon questioning after his arrest, Petitioner admitted committing three of the robberies, explaining that he had an on-going drug problem.

## II. STANDARD GOVERNING PETITIONS FOR HABEAS CORPUS

For factual and legal issues that have already been adjudicated in state court, the Court may only grant a writ of habeas corpus if that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1) and (2).

A state court's determination is contrary to clearly established federal law where it applies a rule that contradicts the law set forth in Supreme Court cases, or  confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court's determination involves an unreasonable application of clearly

established Supreme Court precedent if it identifies the correct governing legal principle from the Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Id. at 413; see also Wiggins v. Smith, 539 U.S. 510, 520 (2003). It is not enough that the state court applied clearly established federal law erroneously or incorrectly; the application must also be unreasonable. Williams, 529 U.S. at 410-11; Valdez v. Bravo, 373 F.3d 1093, 1096 (10th Cir.), cert. denied, 543 U.S. 1008 (2004).

## III. DISCUSSION

### A. Joinder of Counts

Petitioner alleges that the trial court committed prejudicial error in permitting joinder of the separate cases against him. Petition, p. 6. He alleges that the counts were initially contained in four separate cases, but were consolidated for trial in an amended information. Id. Petitioner raised this same claim on direct appeal, and the Oklahoma Court of Criminal Appeals held that the "decision to allow joinder of offenses is within the discretion of the trial court, and we find the trial court did not abuse its discretion by allowing joinder of offenses over [Petitioner's] objection." Summary Opinion, p. 2. Case No. F-2002-1259, Oklahoma Court of Criminal Appeals (attached to Response at Ex. 3) (Summary Opinion).

Respondent contends that Petitioner's claim that joinder was improper under state law does not state a claim cognizable in this federal habeas action. Response, p. 5. Moreover, as Petitioner's claim regarding joinder before the Oklahoma Court of Criminal Appeals was premised solely upon state law, Respondent contends that it must also be construed to rely only upon state law here. Id. To the extent Petitioner's claim is

construed to raise a federal constitutional claim, Respondent contends that the Oklahoma Court of Criminal Appeals has never had an opportunity to address the claim and would find it to be procedurally barred at this point. Response, p. 5-6. Thus, it is his contention that Petitioner has procedurally defaulted any federal claim based upon the joinder of counts.

The undersigned agrees that to the extent Petitioner contends the joinder of counts was improper under state law, he raises no claim cognizable in this federal habeas action. Webber v. Scott, 390 F.3d 1169, 1177 n.5 (10th Cir. 2004) ("To the extent [petitioner] is arguing that the joinder is improper under state law, such a claim is not a basis for federal habeas relief) (citing Fox v. Ward, 200 F.3d 1286, 1292 (10th Cir. 2000)). However, from Petitioner's reply, it appears that he is also arguing that the joinder violated his federal constitutional right to due process. Petitioner's Reply, p. 2. This being the case, the undersigned also agrees with Respondent that the state courts have had no opportunity to review this claim, having only considered the joinder issue under state law, and would now find the claim procedurally barred. See Order Affirming Denial of Post-Conviction Relief, p. 2, Case No. PC-2005-337, Oklahoma Court of Criminal Appeals (attached to Response at Ex. 8). Under this concept, sometimes referred to as anticipatory procedural bar, Petitioner may obtain review of his claims only if he can demonstrate cause for his default and actual prejudice resulting therefrom, or show that failure to consider the claim will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 749-50 (1991); Gilbert v. Scott, 941 F.2d 1065, 1067 (10th Cir. 1991); Hain v. Gibson 287 F.3d 1224, 1240 (10th Cir. 2002) (because claim is unexhausted and would

6

be procedurally barred under Oklahoma law if now presented to the Oklahoma Court of Criminal Appeals, it need not be addressed as no cause and prejudice has been alleged, and petitioner cannot establish that a fundamental miscarriage of justice would occur if the claim is not addressed) (citing Okla. Stat. tit. 22, § 1086 and Coleman, 501 U.S. at 735 n. 1)). However, rather than engage in a complex procedural default analysis, the undersigned will instead proceed to an analysis of the merits of this particular claim as it has no merit in any event:[4]

> Improper joinder will result in a constitutional violation "only if it results in prejudice so great as to deny a defendant his ... right to a fair trial." Lucero v. Kerby, 133 F.3d 1299, 1314 (10th Cir.1998) (quotation omitted). Such prejudice may arise when there is a great disparity in the amount of evidence supporting the charges or when the jury is likely to confuse the evidence or infer a criminal disposition on the part of the defendant. Id. at 1314-15.

Webber v. Scott  390 F.3d 1169, 1178 (10th Cir. 2004).  Here, there was no great disparity in the amount of evidence supporting each of the charges.  In fact, according to Petitioner's direct appeal brief, the evidence in support of each charge was strikingly similar and included eyewitness testimony from the victim of the robbery at each store.[5] Response, Ex. 1, p. 2-8.  Although some of the clerks were also given a note, and additional evidence found by the officer who arrested Petitioner immediately following the final robbery was available to support that particular charge, including $150 in cash,

---

[4]Romero v. Furlong, 215 F.3d 1107, 1111 (10th Cir. 2000) ("[T]his case presents a number of complex issues concerning the applicability of ... procedural bar to these claims. We need not and do not address these issues, however, because the case may be more easily and succinctly affirmed on the merits.").

[5]One of the witnesses was declared unavailable at trial, and his preliminary hearing testimony was instead read to the jury over defense objection.  Response, Ex. 1, p. 2 n. 2.

a jacket matching the description given by the Dunkin Donuts clerk, and a  Dunkin Donuts sack, there was not such a disparity of the evidence supporting the various charges so as to confuse the jury.  In his reply, Petitioner claims that the evidence of each of the joined offenses "would not have been cross-admissible," Petitioner's Traverse, p. 2.  However, under Oklahoma's Evidence Code, evidence of at least some of the other offenses could have been admissible in a trial of the others pursuant to Okla.  Stat.  tit. 12, §  2404(B) as evidence of other crimes or wrongs to prove motive, intent, common scheme or plan, or identity.  Myers v. State, 17 P.3d 1021, 1029-30 (2001); Lott v. State, 98 P.3d 318, 334 (Okla. Crim. App. 2004), cert. denied 125 S. Ct. 1699 (2005).  According to the summary of the evidence as contained in Petitioner's brief on direct appeal, the robberies were very similar, and six of the robberies were effectuated by use of a note in which the word "shoot" was misspelled as "shot." In summary, the undersigned finds that Petitioner's right to a fair trial was not denied by joinder of the eleven separate robbery charges, and recommends denial of relief on Ground One.

   **B.  Excessive Sentence**

   Petitioner next alleges that his sentences are excessive under both the Eighth Amendment and the Oklahoma Constitution in that the trial court ordered his eleven life sentences to be served consecutively.  Petition, p.  8.  Respondent claims that Petitioner raised this same claim on direct appeal, resulting in modification of his life sentences to be served concurrently rather than consecutively.  Response, p.  7-8.  In his reply, Petitioner concedes that the Oklahoma Court of Criminal Appeals has already addressed this claim and granted him relief.  Petitioner's Traverse, p.  2-3.  See Response, Ex.  3, p.

8

2-3 (Summary Opinion, Case No.  F-2002-1259).  Accordingly, the undersigned need not address it.

### C.  Ineffective Assistance of Appellate Counsel

#### 1.  Conflict of Interest – Ineffective Assistance of Trial Counsel

Petitioner claims that it was a conflict of interest for a member of the Oklahoma County Public Defender's office to represent him at trial and on appeal.  Although Petitioner fails to elaborate on this claim in the petition filed herein, his state post-conviction application sets forth more detail.  See Brief in Support of Petitioner's Application for Post Conviction Relief, p. 3 (Response, Ex.  4).  Therein, he claims that this conflict of interest led to appellate counsel's failure to raise on appeal two instances of ineffective assistance of trial counsel.  Id. at  7.  First, he claims that appellate counsel failed to raise as error trial counsel's concession of his guilt as to two of the charges during her closing argument in the guilt and innocence stage without first consulting Petitioner.  Id. at 7-8.  Second, he claims that appellate counsel failed to raise as error trial counsel's stipulation as to inadmissible prior convictions used for enhancement during the punishment phase.  Id. at 9.

Respondent contends that Petitioner's ineffective assistance of appellate counsel claim – including his conflict of interest claim – was fully adjudicated on the merits by the Oklahoma Court of Criminal Appeals, and that because the Court's determination that he was not denied effective assistance of appellate counsel is neither contrary to nor an unreasonable determination of applicable federal law, his claim must be denied here. Response, p.  8-10.  He also claims that this Court must indulge a strong presumption that

counsel's performance was professional and reasonable, and that Petitioner bears the burden of overcoming this presumption.  Id. at 9.

In considering Petitioner's claim of ineffective assistance of appellate counsel in his application for post-conviction relief, the state district court reached the following conclusions which are relevant to this Court's analysis:

> Petitioner complains in his Application for Post-Conviction Relief that his trial counsel was ineffective.  A claim of ineffective assistance of counsel "begins with the presumption that trial counsel was competent . . . and therefore the burden is on the accused to demonstrate both deficient performance and resulting prejudice."  In order to demonstrate ineffective assistance of counsel a Petitioner must make two (2) showings: first, counsel's performance was so seriously deficient that representation fell below an objective standard of reasonableness and was not within the range of competence demanded of attorneys in criminal cases and second, but for counsel's unprofessional errors there is a reasonable probability that the result of the proceeding would be different.  Petitioner's allegation of ineffective assistance of trial counsel is factually insufficient under the Strickland analysis and is without merit.

> Petitioner complains in his Application for Post-Conviction Relief that his appellate counsel was ineffective for failing to raise issues.... Asking whether the deficient performance supports a conclusion "either that the outcome of the trial would have been different but for the errors or that the defendant is factually innocent".... Petitioner wholly fails to show that appellate counsel's performance was deficient.... Therefore, Petitioner's allegation of ineffective assistance of appellate counsel is without merit.

Order Denying Application for Post-Conviction Relief, p. 2-4 (citations omitted) (Response Ex. 6).  On appeal, the Oklahoma Court of Criminal Appeals first found that any allegation as to trial counsel's ineffectiveness could have been raised on direct appeal, and as it was not, was waived.  Order Affirming Denial of Post-Conviction Relief, p. 2 (citation omitted) (Response, Ex. 8).  Next it noted that "[f]ailure to raise each and every issue is not determinative of ineffective assistance of counsel and counsel is not

required to advance every cause of argument regardless of merit" and that the "record does not support Petitioner's contention he was denied effective assistance of appellate counsel." Id.

In a federal habeas action, ineffective assistance claims are governed by the familiar two-part test established by Strickland v. Washington, 466 U.S. 668, (1984), under which the petitioner "must establish that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different." Hain v. Gibson, 287 F.3d 1224, 1231 (10th Cir. 2002). Application of Strickland requires us to "look to the merits of the omitted issue." Id.

> [I]n analyzing an appellate ineffectiveness claim based upon the failure to raise an issue on appeal, "we look to the merits of the omitted issue," generally in relation to the other arguments counsel did pursue. If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance; if the omitted issue has merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance.

Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003) (quoting Neill v. Gibson, 278 F.3d 1044, 1057 (10th Cir. 2001)); accord Miller v. Mullin, 354 F.3d 1288, 1298 (10th Cir. 2004) (citations omitted), cert. denied 543 U.S. 1154 (2005). *Unless there is a reasonable probability that the omitted claim would have resulted in Petitioner obtaining relief on appeal*, there is no ineffective assistance of appellate counsel under the Sixth Amendment.  Neill,  278 F.3d at 1057 n. 5 (emphasis added). Furthermore, because the

Oklahoma courts have already addressed Petitioner's claim of ineffective assistance of appellate counsel, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) confines the Court's review to the question of whether those decisions were contrary to or involved an unreasonable application of Strickland. 28 U.S.C. § 2254(d)(1); see also Turrentine v. Mullin, 390 F.3d 1181, 1202 (10th Cir. 2004), cert. denied 125 S. Ct. 2544 (2005).  The undersigned finds that they were not, and were in fact wholly consistent with the teaching of Strickland.

The undersigned will turn first to Petitioner's claim that appellate counsel had a conflict of interest which caused her not to raise ineffective assistance of trial counsel on direct appeal.  See Brief in Support of Petitioner's Application of Post Conviction Relief, p. 3 (Response, Ex.  5).  At the outset, it should be noted that no inherent conflict exists merely because appellate and trial counsel are both employed by the Public Defender's Office. Watson v. Poppell,  No.04-6213, 154 Fed.Appx. 712, 715, 2005 WL 3065956, **2 (10th Cir. Nov. 16, 2005), petition for cert. filed January 26, 2006.[6]   The Sixth Amendment right to effective assistance of counsel includes the "right to representation that is free from conflicts of interest." United States v. Bowie, 892 F.2d 1494, 1500 (10th Cir. 1990) (quoting Wood v. Georgia, 450 U.S. 261, 271 (1981)).  As further explained by the Tenth Circuit:

> To prevail on an ineffective assistance of counsel claim due to an alleged conflict of interest, even if the trial court was aware or reasonably should have known of the potential conflict, the defendant must establish that an actual conflict of interest adversely affected his counsel's performance "as opposed to a mere theoretical division of loyalties." An actual conflict of

---

[6]This and any other unpublished dispositions are cited as persuasive authority pursuant to Tenth Circuit Rule 36.3.

> interest results if counsel was forced to make choices advancing other interests to the detriment of his client. Without a showing of inconsistent interests, any alleged conflict remains hypothetical, and does not constitute ineffective assistance. Indeed, to demonstrate an actual conflict of interest, the petitioner must be able to point to specific instances in the record which suggest an impairment or compromise of his interests for the benefit of another party.

United States v. Carrasco, No. 01-2053, 2002 WL 31846308, at **1 (10th Cir. Dec. 20, 2002) (citations omitted) (quoting Mickens v. Taylor, 535 U.S. 162, 171 (2002)). "[U]ntil," it said, "a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." Mickens v. Taylor, 535 U.S. 162, 175 (2002) (quoting Cuyler v. Sullivan, 446 U.S. 335, 350 (1980) (emphasis added in Mickens). In cases where there has been no concurrent representation of parties with conflicting interests, the general rule of Strickland is applied to measure the performance of counsel. See Mickens, 535 U.S. at 175 (language of Sullivan does not clearly establish, or even support, the expansion of a special ineffective assistance of counsel claim analysis beyond the multiple concurrent representation setting). In this case, Petitioner is not claiming an actual conflict of interest caused by the concurrent representation of multiple parties, but that both trial counsel and appellate counsel were employed by the Oklahoma County Public Defender's Office, causing appellate counsel to be reluctant to raise trial counsel's alleged ineffectiveness on appeal. Accordingly, the undersigned will proceed to apply the normal Strickland analysis to determine if appellate counsel's failure to raise ineffective assistance of trial counsel as an issue on appeal was itself, ineffective under the Sixth Amendment. This of course

13

requires an analysis of trial counsel's effectiveness, and will necessarily resolve Petitioner's stand-alone claim based on ineffective assistance of trial counsel as well.[7]

**a. Consultation prior to concession of guilt**.

The first issue that Petitioner claims appellate counsel omitted was trial counsel's failure to consult with him and obtain his consent prior to concession of guilt during her closing argument in the guilt and innocence stage to one of the counts of first degree robbery and to the lesser included offense of robbery by fear on the count of robbery with an imitation firearm. Brief in Support of Petitioner's Application for Post-Conviction Relief, p. 7 (Response, Ex. 5). Citing Jackson v. State 41 P.3d 395, 400 (Okla. Crim. App. 2001), Petitioner claims that failure to consult with and obtain a defendant's consent prior to such a concession constitutes deficient performance, and that his counsel did not "preserve the records to show this strategy was approved and consented to" by Petitioner as required by Jackson. He also claims that Jackson requires client consent to such concessions to be on the record, and if it is not, lack of consent and prejudice will be presumed. Id. at 8-9.

First, the Jackson case does not support Petitioner's claim. In Jackson, counsel made a complete concession of guilt in the first stage of a capital murder trial, leading the Oklahoma Court of Criminal Appeals to establish a new rule for complete concessions of guilt in capital cases:

---

[7]The undersigned notes that the fact that trial and appellate counsel were both employed by the Oklahoma County Public Defender's Office would be relevant to any procedural bar analysis with regard to the ineffective assistance of trial counsel claim. See Cannon v. Mullin, 383 F.3d 1152, 1173-74 (10th Cir. 2004), cert. denied 125 S. Ct. 1664 (2005). However, it is unnecessary to resolve the question presented by that office arrangement in the procedural bar context as Petitioner's ineffective assistance of trial counsel claims are without merit in any event.

We hold that a complete concession of guilt during the first stage of a capital trial must only be made with the client's consent or acquiescence. It has proven to be problematic to attempt to determine this issue months after the fact in an evidentiary hearing. In the future, therefore, if counsel chooses this strategy the trial court shall be informed before trial, or at least prior to the concessions being announced to the jury, and the trial court shall determine from counsel and the defendant, on the record, whether this strategy is one in which the client has consented or acquiesced. If the client does not consent to or acquiesce in the strategy, then counsel shall follow the client's wishes.

The holding in this case should not be confused with cases wherein we have held that some type of tactical retreat does not amount to ineffective assistance of counsel. In <u>Trice v. State</u>, 1996 OK CR 10, ¶ 19, 912 P.2d 349, 355, a capital murder case, we held that failing to challenge a rape count and conceding guilt to the charge was not ineffective, <u>per se</u>. Furthermore, admitting involvement in a crime without admitting guilt to the charged offense does not amount to ineffective assistance of counsel, <u>per se</u>. <u>Hale v. State</u>, 1988 OK CR 24, ¶ 48, 750 P.2d 130, 142. Tactical retreats which concede that a defendant was involved in some aspect of a crime, a lesser included offense or some of the non-capital counts are not included in this holding. Moreover, an attorney's admission during the second stage of trial that a client is guilty of crimes for which he was convicted during the first stage is not a denial of due process of law. <u>See</u> <u>Abshier</u>, 2001 OK CR 13, ¶ 71 & n. 6, 28 P.3d 579, 596 & n. 6.

<u>Jackson</u>, 41 P.3d at 400-01.  The limited nature of the <u>Jackson</u> holding was further clarified in <u>Lott v. State,</u> 98 P.3d 318, 337 (Okla. Crim. App. 2004), <u>cert.</u> <u>denied</u> 125 S. Ct. 1699 (2005), in which the Court stated that it "placed the burden on the appellant to show that he was not consulted and that he did not agree to or acquiesce in the concession strategy." <u>Id.</u>

Even assuming that counsel failed to consult with Petitioner regarding the concessions prior to the time of her closing statement, he neither alleges nor makes any showing that the reasons she gave to the jury for those concessions were untrue.

There's been a lot of media lately about criminal defense lawyers and about we may be less than honest or - - or not very good people.  And when

I've read those things recently in the news, it reminded me of that line in To Kill a Mockingbird where the man on the stand says, "You've got to watch out for tricky lawyers like Atticus Finch." And I have to tell you right up front that I am a criminal defense lawyer and I'm proud of it. We all live by the law. The law in these jury instructions are what are going to guide your evaluation of the evidence in all 12 counts.

I have to tell you that it's pretty clear to me that the state has proved beyond a reasonable doubt that my client Wendell Hamilton is guilty of Robbery by Fear in Count 6, which was the robbery of Vasu Vasili at the Village Quality Foods on January 15th, 2001. And why do I say that? For one thing, there's a video that you saw that showed my client. It was him. Mr. Vasu Vasili testified that Wendell Hamilton lifted his jacket and he saw what looked like a gun butt and he said, "I was scared." And he didn't say, and I believe Ms. Schmidt said, "Give me the money, this is a robbery." My notes say that he just said, "Give me the money," and that that scared him. He said, "I was scared," and then gave him the money and he went out to his car.

Wendell Hamilton - - the police officer who talked to him in the interview said that he admitted to robbing the Indian store. [Petitioner's son] told you that his father robbed the Indian store.

So under the law that you are given in these instructions, all those elements are met. Vasu - - he came in, he said, "Give me the money," he showed him - - he scared him, he said, "I was scared," and he gave him the money. Under the instructions you've been given, I do not believe there could be a reasonable doubt in your mind. That's hard for me to say, but that's the truth, isn't it? There's no reasonable doubt that under the law you've been given he is guilty beyond a reasonable doubt of Count 6.

I believe the evidence shows that he is also guilty beyond a reasonable doubt of Count 10. Not of with the imitation firearm. That was - - the Information charges in Count 10 Robbery with an Imitation Firearm of Betty Harley at Dunkin Donuts on January 23rd, 2001.

And what did the state bring you? They brought you Betty Harley. She said he did his jacket (indicating), she gave him the money, he was arrested shortly thereafter, she said she was scared. Dunkin Donuts.

Where's the toy gun?

However, I don't believe they have proved that this would raise a reasonable fear that this was capable of making her believe it was real. I

> believe she was afraid.  I believe she was - - it was a robbery.  But I believe the state's evidence has proved to you beyond a reasonable doubt that Count 10, Wendell Hamilton is guilty of Robbery by Fear.  The police officer told you in his statement that he had robbed the Dunkin Donuts, and [Petitioner's son] told you.

Response, Ex.  10 (Official Transcript, p.  35, l.  4-25; p.  36, l.  1-25; p.  37, l.  1-12).

Keeping in mind that counsel's performance is evaluated from the attorney's perspective at the time of the assistance, considered in light of all the circumstances prevailing at that time, and indulging a strong presumption that counsel's conduct fell within the "wide range of reasonable professional assistance," Strickland, 466 U.S. at 689, the undersigned finds that there is no reasonable probability that even if appellate counsel had raised this as error, the Oklahoma Court of Criminal Appeals would have found trial counsel's concessions to have been constitutionally ineffective assistance. Id. at 696-697 (defendants must overcome the "strong presumption" that particular decisions by counsel can be characterized as sound trial strategy). Petitioner does not contest the evidence referred to by trial counsel in the closing statement: the eye witness testimony of each of the victims of the robberies to which guilt was conceded, the video showing Petitioner as the perpetrator of the robbery by fear comprising Count 6 and his confession to that robbery during a police interview, and testimony from Petitioner's own son that his father had robbed the store which was the subject of Count 6.  Response, Ex. 10 (Official Transcript, p. 35, l. 17-21; p. 36, l. 4-7.  Accordingly, trial counsel's decision to concede guilt may reasonably be characterized as sound trial strategy. Moreover, trial counsel's concession with regard to a lesser included offense of Count 10 due to the State's failure to offer the toy gun was apparently of no effect, as Petitioner was found guilty of the

charged offense of robbery with an imitation firearm. Finally, upon Petitioner's request, appellate counsel apparently considered raising this issue on appeal, but decided against it concluding that it would not be successful.   See Brief in Support of Petitioner's Application for Post-Conviction Relief, p. 3 (Response, Ex. 5); Petitioner's Reply, p. 10. Accordingly, the undersigned finds that trial counsel was not constitutionally ineffective, and that appellate counsel was not ineffective for omitting a claim based upon that decision from the appeal.

**b.  Stipulation to prior convictions.**

Petitioner also claims that appellate counsel should have raised a claim on direct appeal based upon trial counsel's stipulation to his prior offenses during the second phase of his trial.  Petition, p.  10-10(A); Brief in Support of Petitioner's Application for Post Conviction Relief, p. 9 (Response, Ex. 5).  In particular, he claims that at the time of the alleged stipulation the order granting the State's application to revoke his suspended sentences in those cases was still pending on appeal. Brief in Support of Petitioner's Application for Post Conviction Relief, p. 10 (Response, Ex. 5). Respondent contends that trial counsel actually "strenuously objected to the admission of Petitioner's judgments and sentences in Case Nos. CF-90-3652, CF-90-3658, CF-90-3840, and CF-90-3726." Response, p. 13.[8]  Respondent attaches a portion of the transcript which reflects the following colloquy:

> [THE STATE] At this time the state would offer what's been
> previously been marked at [sic] State's Exhibit Nos. 28 through 32, those

---

[8]It appears that the reference to Case No. CF-90-3840 should actually be Case No. CF-90-3804.

being judgments and sentences, certified copies of judgments and sentences from the Oklahoma County court clerk.

THE COURT: 28 through 32?

[THE STATE]: Yes, ma'am.

And, specifically, State's Exhibit No. 28 being Case No. CRF-88-601; State's No 29 being CF-90-3652; State's Exhibit No. 30 being CF-90-3658; State's Exhibit 31 being CF-90-3804; and State's Exhibit No. 32 being CF-90-3726.  Self-authenticated documents.  And I would offer those into evidence.

THE COURT: Any objection?

[PETITIONER'S COUNSEL]: Yes, Your Honor.  May we approach?

THE COURT: Sure.

(The following was said at the bench:)

[PETITIONER'S COUNSEL]: Your Honor, we would object to admission of 29 through 32, State's Exhibits 29 through 32, on the grounds that these are currently on appeal, the revocation is currently on appeal, and therefore they're not available for enhancement.

THE COURT: I think the J and S's that you're offering show a split sentence, do they not?

[THE STATE]: Yes.  The sentence itself is not on appeal.

THE COURT: The sentence would not be on appeal.  The fact that he may be revoked - - that was - - actually, I believe that he was revoked, it was appealed, and it was reversed.

[THE STATE]: It was reversed by the Court of Criminal Appeals.

[PETITIONER'S COUNSEL]: Well, we have not received.

THE COURT: Well, I have, and you should have a long time ago.  But these are original J and S's where he got ten in and ten out?  Is that what it was?

19

>    [THE STATE]: Twenty in and ten out.
>
>    THE COURT: Twenty in and ten.
>    Are still proper J and S's.
>
>    [PETITIONER'S COUNSEL]: I understand.  But what I'm saying is I checked the Court of Criminal Appeals, we checked the thing, we've called the Court of Criminal Appeals, and they tell us it is still pending.
>
>    THE COURT: Even if it is still pending, it has no validity or no legal cause to prevent these original J and S's.  Now, if the state were offering J & S's showing that those portions have been revoked, your position may have some merit.  But they are not.  They are offering the original J & S's back when the defendant entered his plea?
>
>    [THE STATE]: That's correct.
>
>    [PETITIONER'S COUNSEL]: Well just note our objection to the documents on those grounds, Your Honor.

Response, Ex. 11 (Official Transcript, p. 82, l. 1-25; p. 83, l. 1-25; p. 84, l. 1-3).

Counsel for the State then went on to offer certified docket sheets for all five convictions.

Thus, as Respondent states, Petitioner's trial counsel not only failed to stipulate to the convictions, but argued the inadmissibility of the four convictions on the very grounds he claims she should have raised.  Accordingly, there was no ineffective assistance of trial counsel, and any attempt by appellate counsel to raise an error on appeal based upon trial counsel's stipulation to Petitioner's prior convictions would obviously have had no chance of succeeding.  Therefore, it was reasonable for appellate counsel to omit such a claim on direct appeal.

### D.  Error Predicated on Enhancement Instructions

Petitioner's final two claims are based upon the trial court's instruction to the jury under the general enhancement provisions of Okla. Stat. tit. 21, § 51.1(B), rather than

under the specific enhancement provision contained in the statute pertaining to robbery with a dangerous weapon.  Brief in Support of Petitioner's Application for Post Conviction Relief, p. 13, 15 (Response, Ex. 5).  He claims that the trial court committed fundamental error in instructing the jury that the minimum punishment was twenty years under the general enhancement statute, as opposed to ten years under the robbery enhancement statute.  Id. at 13.  Petitioner raises both a stand-alone claim based upon this error, and argues that appellate counsel was ineffective for failing to raise the error on appeal.

Respondent contends that the State could have enhanced Petitioner's conviction under either the general habitual offender enhancement provision or the enhancement provision for robbery offenses.[9] Response, p. 18 & Ex. 12. As set forth above, Respondent also notes that both the state district court and the Oklahoma Court of Criminal Appeals found that Petitioner had failed to prove his appellate counsel was ineffective under the Strickland standard.  Response, p. 10-11.

With regard to Petitioner's stand-alone claim, errors relating to jury instructions in a state criminal trial are not reviewable in a federal habeas corpus action "unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law." Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997) (quoting Long v. Smith, 663 F.2d 18, 23 (6th Cir. 1981)).  As emphasized by the Supreme Court in Henderson v. Kibbe, 431 U.S. 145, 154 (1977), "[t]he question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates

_____

[9]Respondent contends that the stand-alone claim is procedurally barred because it was not raised on direct appeal.  Again, however, because the claim is easily addressed on the merits, the undersigned will not undertake the rather complicated procedural bar analysis and will instead proceed to the merits.

due process.'" (quoting <u>Cupp v. Naughten</u>, 414 U.S. 141, 147 (1973)); <u>see also</u> <u>Maes v. Thomas</u>, 46 F.3d 979, 984 (10th Cir. 1995) ("The question . . . is not whether the [challenged] instruction is undesirable, erroneous, or even universally condemned, but whether the instruction so infected the trial that the resulting conviction violates due process.") (internal quotations omitted).   A petitioner's burden, therefore, to establish constitutional error based on an erroneous jury instruction, is a heavy one.   <u>Nguyen</u>, 131 F.3d at 1357.   <u>Cf.</u> <u>Lujan v. Tansy</u>, 2 F.3d 1031, 1036 (10th Cir. 1993) ("a petitioner in a non-capital case is not entitled to habeas relief for the failure to give a lesser-included offense instruction, 'even if in our view there was sufficient evidence to warrant the giving of an instruction on a lesser included offense.'") (quoting <u>Chavez v. Kerby</u>, 848 F.2d 1101, 1103 (10th Cir. 1988)).

The Oklahoma Court of Criminal Appeals has "held that when one of the predicate offenses is not a robbery offense and the new offense is a robbery offense, it is proper to enhance under either Section 51 or Section 801." <u>Turner v. State</u>, 803 P.2d 1152, 1158 (Okla. Crim. App. 1990) (citing <u>Chambers v. State</u>, 764 P.2d 536, 538 (Okla. Crim. App.1988)); <u>see generally</u> Okla. Stat. tit. 21, § 51.1(B); Okla. Stat. tit. 21, § 801. As shown by Respondent, one of the offenses used to enhance Petitioner's sentences was not a robbery offense, but was a felony bogus check conviction.   <u>See</u> Response, Ex. 12 (Case No. CF-1988-601, District Court of Oklahoma County).   Thus, it was clearly proper under Oklahoma law to enhance Petitioner's sentence under the general enhancement provision. As the instruction in question was proper under Oklahoma law, it could not have served to have deprived Petitioner of due process or rendered his trial fundamentally unfair.

Moreover, there was no reasonable probability that inclusion of the omitted claim would have resulted in Petitioner obtaining relief on appeal, especially considering the fact that the jury gave Petitioner the maximum term of life imprisonment on each robbery count.   Accordingly, the state courts' finding that Petitioner received constitutionally effective appellate counsel was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

### E.  Evidentiary Hearing

Finally, Petitioner urges the Court to grant him an evidentiary hearing, claiming that "there are material issues of facts for records to be made and preserved." Petition, p. 10(D).  Respondent asserts that Petitioner is not entitled to an evidentiary hearing in this matter because "he utterly fails to identify any factual issues which were not developed but need to be."  Response, p.  19.

The AEDPA restricts the Court's ability to grant evidentiary hearings to certain limited circumstances. Section 2254(e)(2) provides that "[i]f the applicant has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant" can satisfy one of the two exceptions listed in § 2254(e)(2)(A) and (B).  First, a habeas petitioner must show that the claim relies on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or "a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A)(i)-(ii); <u>Medlock v. Ward</u>, 200 F.3d 1314, 1323 (10th Cir. 2000). Second, a petitioner must show that the facts underlying his claim would "establish by

clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."   28 U.S.C. § 2254(e)(2)(B).  If, however, the habeas petitioner did not fail to develop the factual basis of a claim in State court, then § 2254(e)(2) is not applicable and the Court must analyze whether a hearing is appropriate or required under the pre-AEDPA standard.  Bryan v. Mullin, 335 F.3d 1207, 1214 (10th Cir.2003) (en banc), cert. denied, 541 U.S. 975 (2004). The Brief in Support of Petitioner's Application for Post Conviction Relief and the Brief in Support of Petition in Error both show that Petitioner requested a hearing.  However, "[m]ere requests for evidentiary hearings will not suffice; the petitioner must be diligent in pursuing the factual development of his claim." Cannon v. Mullin, 383 F.3d 1152, 1176 (10th Cir. 2004) (quoting Dowthitt v. Johnson, 230 F.3d 733, 758 (5th Cir. 2000), cert. denied 125 S. Ct. 1664 (2005).  Here, other than alleging that he requested a hearing on his post-conviction application, Petitioner has failed to show any attempts to develop his claims factually. The undersigned finds that Petitioner has not been diligent in pursuing the factual basis for his claims, and that he cannot satisfy either one of the two exceptions listed in § 2254(e)(2)(A) and (B).

Alternatively, if Petitioner's request for a hearing is sufficient to show diligence, he is still not entitled to a hearing on his petition. If a petitioner has shown that he has been diligent in attempting to develop the factual basis of his claim, this Court must determine whether an evidentiary hearing is necessary under the standard in effect prior to adoption of the AEDPA. Under the prior standard, a petitioner had to present "allegations which, if proved, would entitle him to [habeas] relief." Stouffer v. Reynolds, 168 F.3d 1155, 1168

24

(10th Cir. 1999).  The undersigned finds that none of Petitioner's claims would entitle him to federal habeas relief even with the presentation of evidence.  As shown above, Petitioner's claims are not legally sufficient. Consequently, Petitioner is not entitled to an evidentiary hearing under the standard in effect prior to adoption of the AEDPA.  See, e.g., Fox v. Ward, 200 F.3d 1286, 1302 (10th Cir. 2000) (upholding the district court's denial of an evidentiary hearing when the petitioner had not "ma[d]e allegations which, if proved, would entitle him to relief"). Under these circumstances, the Court should deny Petitioner's request for an evidentiary hearing.

## RECOMMENDATION

For these reasons, the undersigned recommends that the petition for writ of habeas corpus be denied. Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by March 27, 2006, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  Petitioner is advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein.  Moore v. United States, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 7th day of March, 2006.**

_____
DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE